HALL v. GAMBRILL et al.

(Circuit Court of Appeals, Fourth Circuit. February 8, 1899.)

No. 287.

1. APPEAL—NECESSARY PARTIES—SEVERABLE INTERESTS.
   Where an agent who made a contract for the sale of land on behalf of the owner, on which sale, if valid, he was entitled to a commission, joined with the purchaser in a suit to compel specific performance by the vendor, their interests in the decree rendered are separate and distinct, and either may appeal without joining the other.

2. POWER TO SELL LAND—WHEN COUPLED WITH AN INTEREST—AGREEMENT FOR COMMISSIONS.
   The fact that a power to sell land authorizes the agent to retain a percentage of the purchase money in payment for his services does not make it a power coupled with an interest, as the interest of the agent is only in the proceeds of the land arising from the execution of the power.

3. PRINCIPAL AND AGENT—FRAUDULENT CONTRACT BY AGENT—SPECIFIC PERFORMANCE.
   A court of equity will not enforce against an owner of land a contract of sale made by his agent under authority given six years before, where the land has greatly appreciated in value meantime, and the agent, without advising his principal of such fact, made the sale for a price grossly inadequate at the time, though within the terms of his original authority.

4. SAME—COMPENSATION OF AGENT.
   Nor can the agent in such case enforce the agreement for compensation, the consideration for which was his undertaking to faithfully perform his duty to his principal.

5. JURISDICTION OF FEDERAL COURT OF EQUITY—STATUTORY ATTACHMENT.
   A federal court of equity has not jurisdiction of a proceeding for an equitable attachment under a state statute.[1]

Appeal from the Circuit Court of the United States for the District of West Virginia.

This was a suit in equity by Cyrus Hall and Ray C. Coulter against J. H. Gambrill and another for the specific enforcement of a contract to convey land. From a decree dismissing the bill (88 Fed. 709), the complainant Hall appeals.

W. W. Arnett (D. C. Casto and V. B. Archer, on brief), for appellant.
Wm. G. Peterkin (Van Winkle & Ambler, on brief), for appellees.

Before GOFF, Circuit Judge, and PAUL and WADDILL, District Judges.

PAUL, District Judge. This cause is here on appeal from a decree of the United States circuit court for the district of West Virginia.

---

[1] For jurisdiction of federal courts of equity, see note to Barling v. Bank of British North America, 1 C. C. A. 514.

The appellant was one of the plaintiffs in the court below, and the appellees were the defendants. On the 6th day of September, 1889, the appellee J. H. Gambrill, a citizen of the state of Maryland, and the appellant, Cyrus Hall, a citizen of the state of West Virginia, entered into an agreement whereby said Hall undertook to sell for said Gambrill certain tracts of land lying in Ritchie county, W. Va. The material part of said agreement is as follows:

"The said sales to be made for not less than five dollars ($5) per acre; the payments to be not less than one-third cash, and the deferred payments to be secured by good and sufficient liens, with notes as collateral security; the same to bear interest from the day of said sale. The said party of the second part hereby agreeing to perform all necessary work in the sale of said lands, draw all deeds of conveyance, mortgages, and notes in legal and proper form, and for which to receive, as compensation for said services, twenty per cent. (20 per cent.) of the net receipts of said sales, but that the 20 per cent. to be received only as the purchase money is collected, unless the party of the second part shall sell said lands for one-half cash; then, and in that event, he is to receive his 20 per cent. commissions,—that is, the whole amount out of the one-half cash received,—but does bind himself to collect all deferred payments if the party of the first part desires it. It is hereby agreed and understood that all mortgages, notes, and securities are to be made payable to the said James H. Gambrill, or his order, who will, when the same have been paid and the said purchase money has all been fully paid, execute with himself and wife good and sufficient deeds conveying the said lands to the purchaser or purchasers. The said 20 per cent. to be for all legal services heretofore rendered in defense of title to said lands, or may be rendered."

On the 12th of March, 1897, the appellant, Hall, entered into a contract with one Ray C. Coulter for the sale of a tract of land of 563½ acres, the land in controversy, at $9 per acre. On the 15th day of March, 1897, the said J. H. Gambrill made a deed of assignment to Robert Gambrill, as trustee, of the tract of land in question, for the benefit of the creditors of said J. H. Gambrill. This deed was recorded in Ritchie county, W. Va., on the 18th day of March, 1897. The contract between Hall and Coulter bears date the 12th day of March, 1897. The evidence shows it was not signed for several days after that date. It was acknowledged April 5, 1897, and recorded on that day. On the 26th day of March, 1897, Hall wrote to Gambrill that he had made a sale of the land, and inclosed a deed dated March 30, 1897, conveying the same, to be executed by Gambrill and his wife to Coulter. On the 31st day of March, 1897, Gambrill wrote to Hall notifying him that he had made an assignment, and that he had no power to execute the deed to Coulter. On the 3d day of April, 1897, said Cyrus Hall and Ray C. Coulter instituted in the circuit court of Ritchie county a suit in equity against said J. H. Gambrill and Robert G. Gambrill. The said Hall sued out in this suit, under the provisions of a statute of West Virginia, process of attachment against the property of said J. H. Gambrill, had the same levied on the 563½ acres of land in controversy, and also had the attachment served on himself, as attorney in fact of J. H. Gambrill, requiring him, as garnishee, being indebted to and having in his possession the effects of the defendant J. H. Gambrill, to appear before the circuit court of Ritchie county on the first day of its next term, to answer as to such indebtedness and effects.

92 F.—3

Hall, in his affidavit, on which the attachment issued, states his claim as follows:

"That, so far as this plaintiff is concerned, this action is brought to recover for a debt arising out of contract for legal services and commissions for the sale of a certain tract of land in Ritchie county, W. Va., under a written agreement between this affiant and James H. Gambrill, which said agreement is here made part of this affidavit, as Exhibit C. H."

This affidavit further states that the amount which he believes he is, at the least, justly entitled to recover in said suit, is $1,014.30, with the interest until paid, and that the following grounds of attachment exist, to wit: That all of said debt is due, and that the defendants, and both of them, are not residents of the state of West Virginia.

The bill filed by Hall and Coulter, after reciting the transactions between Hall and Gambrill, and between Hall and Coulter, and a statement of the execution of the deed of assignment by J. H. Gambrill to Robert G. Gambrill, alleges that the said pretended deed of assignment from J. H. Gambrill to his son, Robert G. Gambrill, is fraudulent, null, and void, and constitutes a cloud upon the title of the purchaser, Ray C. Coulter, which ought to be canceled and removed. Therefore, quoting from the bill—

"It was intended wholly and solely for the purpose of cheating and defrauding Cyrus Hall, one of the plaintiffs, out of the sum of $1,014.30, due to him for legal services and commissions for making said sale, and also to cheat, defraud, and deprive the plaintiff Ray C. Coulter from obtaining a title to the tract of land so purchased by him, as aforesaid. They further show to your honor that they had vested rights which had become complete and irrevocable, and could not in any way be taken away from them by any act on the part of the defendant Gambrill."

The prayer of the bill, omitting the formal parts, is:

"That the pretended deed of assignment, heretofore referred to, from the defendant J. H. Gambrill, to his son, Robert G. Gambrill, may be canceled, set aside, and removed as a cloud upon the title of the purchaser, Ray C. Coulter; that said contract of sale entered into between J. H. Gambrill, by Cyrus Hall, his attorney in fact, and Ray C. Coulter, may be specifically enforced; that your honor will require the defendants to execute, acknowledge, and deliver for record a good and sufficient deed, with covenants of general warranty; that, in case they fail within the time required by your honor to execute said conveyance, a commissioner may be appointed to execute the same in their behalf; that the plaintiff Cyrus Hall may have enforced his attachment lien for $1,014.30, and be allowed to retain in his hands said sum out of the first payment made on said land, as per contract with J. H. Gambrill, filed as Exhibit No. 2, as part of this bill."

At the May term, 1897, of the circuit court of Ritchie county, the cause, on petition of the defendants, was removed into the circuit court of the United States for the district of West Virginia. To this bill the defendants, J. H. Gambrill and Robert G. Gambrill, filed their joint and separate answer, and also filed a cross bill. In the cross bill they prayed for and obtained an injunction restraining Coulter from taking possession of the land sold to him by Hall. The answer and the cross bill contain substantially the same allegations. They deny the construction of the contract between Hall and Gambrill, as claimed by Hall and Coulter. They charge Hall with endeavoring to sell the land to subserve his own interest, or that of some member of his family, of entering into a conspiracy with his co-

plaintiff, Coulter, to dispose of the land at less than its value; that Hall, as the agent of Gambrill, failed to keep his principal notified of the greatly increased value of the land by reason of the discovery of oil and the development of the oil industry on neighboring lands; and ask that the contract of March 12, 1897, between Hall and Coulter, be canceled and annulled. A great deal of testimony was taken in connection with the conduct of Hall in dealing with the land, and as to the conduct of Coulter in making his purchase; also as to the greatly increased value of the land from what it was, in 1889, in a wilderness state, when Hall became Gambrill's agent, to what it was at the time Hall sold the land to Coulter.

On the hearing, the circuit court decreed that the plaintiffs, Hall and Coulter, were not entitled to any relief, and dismissed the bill. It declared the contract of March 12, 1897, between Hall and Coulter, for the sale of the 563½ acres of land, null and void and canceled, and set aside the same as a cloud upon the title of said J. H. Gambrill and R. G. Gambrill, trustee, and perpetuated the injunction granted on the 8th day of June, 1897. The decree further provided:

"This decree is without prejudice to any rights which may hereafter accrue to said Cyrus Hall, under the certain contract in evidence between him and J. H. Gambrill, bearing date on the 6th day of September, 1889."

From this decree, the plaintiff Hall alone appealed. Omitting the argumentative statements in the assignments of error, the errors complained of are:

(1) "In that the court decreed that the plaintiffs, Cyrus Hall and Ray C. Coulter, are not entitled to relief in said cause or either of them."

(2) "In decreeing that J. H. Gambrill and Robert Gambrill, plaintiffs in the cross bill, were entitled to relief prayed for in said cross bill."

(3) "That the court erred to the prejudice of the plaintiffs in the original bill, Hall and Coulter, in declaring and decreeing to be null and void the writing dated March 12, 1897, and decreeing the same to be a cloud upon the title of J. H. Gambrill and R. G. Gambrill, trustee."

(4) "That the court erred in making the injunction granted on the cross bill on the 8th day of June, 1897, against the plaintiffs in the original bill, perpetual."

(5) "That the court erred to the prejudice of the plaintiffs in the original bill, Hall and Coulter, and to the prejudice of petitioner, in refusing to grant the prayer of the original bill; and in refusing to cancel and set aside the assignment made by the defendant in the original bill, J. H. Gambrill, to his son, R. G. Gambrill, on the 15th day of March, 1897, so far as the same affected the title to the 563½ acres of land in the bill and proceedings mentioned; and in not decreeing that the contract for sale entered into by J. H. Gambrill, by Cyrus Hall, his attorney in fact, and Ray C. Coulter, on the 12th day of March, 1897, be specifically enforced; and in refusing the decree that the defendants, J. H. Gambrill and R. G. Gambrill, be required to make, acknowledge, and deliver for record a deed for the said 563½ acres of land, to Ray C. Coulter."

Coulter having failed to take an appeal, it is not necessary to consider the decree of the circuit court so far as that decree affects his interest, nor to pass upon the questions so elaborately discussed by counsel as to his right to have the contract of March 12, 1897, specifically enforced in his favor. He is not jointly affected with Hall, by the decree of the court below, in such way as to make him a necessary party to the appeal. The interest of Hall is so far separate and

distinct from that of Coulter that Hall can appeal without Coulter. 2 Fost. Fed. Prac. § 482; Forgay v. Conrad, 6 How. 201.

The chief contention here, as in the court below, on the part of counsel for Hall, is that Hall, by virtue of the writing made between himself and J. H. Gambrill on the 6th of September, 1889, acquired such an interest in the proceeds of the sale of the land as made the power of attorney irrevocable by said Gambrill during his lifetime. We concur with the circuit court in its construction of that contract. We also concur in its views as to the failure of Hall to perform his duty as the agent of Gambrill, in neglecting to inform Gambrill, his principal, of the greatly increased value of the land at the time he sold it, in March, 1897, over what it was when it went into his hands for sale, in September, 1889. The evidence in the record fully sustains the court below in holding that he utterly disregarded his duty in this particular.

The learned judge who decided the cause in the circuit court has so clearly and forcibly stated the reasons controlling his decision that we adopt the material part of his opinion as expressing the views of this court. He says:

"It is claimed by the plaintiffs in this action that this power of attorney, executed by Gambrill to Hall, conferred a power upon Hall, coupled with an interest. An inspection of the power of attorney shows that Hall was authorized to sell the land at a sum not less than five dollars per acre, one-third in cash, and deferred payments to be secured by good and sufficient liens. Hall was to perform all necessary work in the sale of the land, draw deeds of conveyances and mortgages, and to receive as a compensation twenty per cent. of the net receipts of said sales, which was to be paid him as the purchase money was collected. The notes to secure the deferred payments were to be made payable to Gambrill, and, in the event a mortgage was taken upon the land, it also was to be made payable to him.

"I do not concur in the position of Hall that, by the terms of this agreement, he acquired an interest, coupled with a power, which authorized him to sell this land, and to compel Gambrill, the owner, to execute the contract made by him. It is very clear to my mind that, at the time the contract was entered into, the object and purpose of the parties was to sell the land at any fair consideration that could be obtained for it, but under no circumstances was it to be sold for less than five dollars per acre. The fact, that Hall was to be paid a commission of twenty per cent. out of the proceeds arising from the sale of the land did not vest in him an interest in it. It was simply a contingent compensation, which he was entitled to whenever a sale was made by him under the power of attorney; but the power of attorney, upon its face, expressly declares that the notes and securities taken in payment of the deferred installments were to be made payable to the said Gambrill, or his order, stipulating that, when all the purchase money had been paid, the said Gambrill and his wife were to execute good and sufficient deeds of conveyance of said land to purchasers. This clause in the power of attorney clearly shows that Gambrill never intended to part with his title to the land, except upon the terms satisfactory to himself. He did not, by the terms and conditions of the power of attorney, place the property in the hands of Hall to sell upon any terms that he (Hall) should contract for; but the whole scope of the power of attorney shows that the contract must be made with Gambrill's approval before he would execute a deed. Hall could not make a deed for the land, or any portion of it, for the reason that he had nothing in the land to convey, having no interest of any kind in it. * * * The words employed in the contract do not seem to be susceptible of any other meaning. The contract confers upon Hall a power to sell, but it does not grant an interest in the land to be sold by him. To create an interest of this character, the power must be irrevocable. By the terms of this contract,

there was no actual transfer of any interest in the land. If, instead of agreeing to pay a commission in the event of a sale of the land, Gambrill had conveyed an undivided interest in the land to Hall, he would then have had an interest in it, not contingent, but actual; but he did not convey any interest in it.

"It was said by Judge Marshall in the case of Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, that 'the power must be ingrafted on an estate in the thing. "A power coupled with an interest" is a power which accompanies or is connected with an interest. The power and the interest are united in the same person. But, if we are to understand by the word "interest" an interest in that which is to be produced by the exercise of the power, then they are never united. The power ceases when the interest commences, and therefore cannot, in accurate law language, be said to be coupled with it.' Such is undoubtedly the law. Applying the principle as stated by Chief Justice Marshall,—'The power ceases when the interest commences, and therefore cannot be coupled with it,'—can it be said that Hall had any interest in the contract until he exercised the power to sell? Clearly, he had no interest that would accrue to him until after the sale was made. His commissions were the only interest he had, under the contract, and the same were contingent upon a sale. There was, under the power of attorney, no actual transfer of any interest in the land by Gambrill to Hall. He was a mere agent of Gambrill to negotiate the sale, subject to the approval of Gambrill; and, when the sale was negotiated and approved, then he was entitled to his commission for making the sale, and not before. A failure to sell before a revocation of the power would terminate all interest he had in the contract, which clearly shows that his interest was contingent on being able to sell the land, and was in no sense an interest running with the land.

"Other questions which arise under this contract might be referred to, more particularly as to whether or not the power of attorney from Gambrill, during the six years subsequent to September, 1889, had not been revoked before the pretended contract made by Hall and Coulter was executed. As to that question it is unnecessary to express an opinion. It, however, appears to me that the equities of the case are clearly with Gambrill. Hall had this property under the power of attorney from 1889 to 1897, before he succeeded in making any negotiations for the sale of it. He was paid from time to time sums of money amounting to nearly two hundred dollars for his attention to the property. In the early part of the winter of 1897, it became apparent, by the development of oil fields, that this land was likely to be valuable oil property. It was then for the first time, during the eight years that he had authority to sell the land, that he ever succeeded in entering into any negotiations for the sale of it. He never informed his principal as to the condition of the country, and the enhancement of the value of the land, and the proximity of it to the oil fields; and he negotiated a sale of the land, as appears from the evidence, at a price far below its value. His agency commenced about six (seven and a half) years before the land was sold; and, after the land had greatly increased in value, Hall undertook to sell it, without ever informing his principal of the increased value of it. A court of equity will not lend its aid to enforce the execution of a contract which is unjust, or deprive either party of his just rights. At the time Gambrill authorized Hall to sell this land, and fixed the minimum price at five dollars per acre, it was in a forest condition; but six years afterwards the land had increased in value to nearly a hundred dollars per acre, and it then became the plain duty of Hall to notify his principal of the increase in value of the land before he attempted to sell it, and, if he failed to do this, it would be an utter disregard of his duty. In the case of Proudfoot v. Wightman, 78 Ill. 553. it was held, upon a bill to enforce the specific performance of an alleged contract for the sale of some lots in Cook county, Ill., that where a party had been authorized, in 1865, to sell the premises at one hundred and fifty dollars per acre, and in 1868 the land had increased to the value of five hundred dollars per acre, it was the plain duty of the agent to notify his principal of the increased value of the land before attempting to sell it; and if this duty was disregarded, and an attempt made to sacrifice the property, it would be a fraud upon the rights of the principal, which a court of equity would not tolerate."

In Wadsworth v. Adams, 138 U. S. 380, 11 Sup. Ct. 303, it is stated in the syllabus, which is a summary of the doctrine as to the right of an agent to the compensation agreed to be paid him, as defined in the opinion of the court by Justice Harlan:

"It is a condition precedent to the right of an agent to the compensation agreed to be paid to. him that he shall faithfully perform the services he undertook to render; and if he abuses the confidence reposed in him, and withholds from his principals facts which ought, in good faith, to' be communicated to the latter, he will lose his right to any compensation under the agreement; being no more entitled to it than a broker would be entitled to commissions who, having undertaken to sell a particular. property for the best price that could be fairly obtained for it, becomes, without the knowledge of the principal, the agent for another, to get it for him at the lowest possible price."

There is one other question presented to the court for its consideration by counsel for the appellant. It is contended that, although the court below considered the sale by Hall to Coulter fraudulent, yet that court should have decreed in favor of Hall the money value of his services to Gambrill, as' attorney, in preserving Gambrill's title to the land. It is a sufficient answer to this question to say that. the only standing that Hall had in the court of equity below was by reason of his assertion that he had an equitable interest in the proceeds of the sale of the land to Coulter, by reason of what he claimed to be an irrevocable contract with Gambrill. On his money demand he sued out an attachment in equity, under a statute of the state of West Virginia, and attacked the deed of assignment from J. H. Gambrill to R. G. Gambrill, trustee, as fraudulent and void, because made with intent to defraud him (Hall) of his interest in the proceeds of the sale of the land to Coulter.

A federal court of equity has no jurisdiction of such a proceeding by attachment in equity, as provided by the statute of West Virginia. Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977; Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127. Numerous authorities might be cited to the same effect. The decree of the court below is without prejudice to Hall's just demands, if any he has, under the said contract. The decree of the circuit court must be affirmed, and it is so ordered. Affirmed.