[No. 3561.   April 28, 1931.]

[Rehearing Denied June 3, 1931.]

CANFIELD v. WITH.

[299 Pac. 351.]

Merritt W. Oldaker, of Albuquerque, for appellant.

Downer & Keleher and John Venable, all of Albuquerque, for appellee.

## OPINION OF THE COURT

BICKLEY, C. J.

Appellee, a real estate agent, brought suit to recover commissions for negotiating a sale of Albuquerque real estate for appellant. From a judgment for appellee, appeal was taken.

We shall hereafter refer to the appellee as the agent and the appellant as the owner.

The agent, having the property of the owner listed, interested the Coopers in the property upon the basis of exchange of some real estate and other property belonging to the Coopers. Negotiations were had which resulted in a written sales agreement between the owner and the Coopers, whereby the owner agreed to sell his property for $23,000, and receive in payment therefor certain property, including a house and premises belonging to the Coopers, at a price of $10,500.

The owner denies liability upon the ground, among others, that his agent, in order to induce him to enter into the contract with the Coopers, falsely and fraudulently represented to him that the house and premises of the Coopers priced in the sales agreement was of a market

value of $10,000; that such representations were known by the agent to be false and fraudulent; that he made the same for the purpose of defrauding the owner; that, in truth and in fact, the market value of the said property did not exceed $6,000, and that the defendant (owner) relied upon such false and fraudulent representations, believing them to be true, and was induced to enter into the sales agreement by such false representations.

The uncontradicted testimony of the owner is that he was unfamiliar with the value of residence property in Albuquerque, and that he relied upon the statement of the agent that the Cooper residence was of the value of $10,000 or more, and believed the statement of the plaintiff in that regard to be true. The owner went with the agent to inspect the Cooper property. The trial judge refused to hear testimony offered by the owner (defendant) as to the actual or market value of the Cooper residence. The evidence offered on the question of value was of two responsible real estate agents residing in Albuquerque, and it was stated in the offer that they would testify that the value of the property did not exceed $6,500 or $7,000. The court refused the offer of the testimony of the two real estate men as to value of the property, saying:

"That offer will be refused because the court considers it immaterial what the opinion of experts may be on the value of this property, the defendant having agreed to pay that sum for it, there being no false representations about it, it being a matter on which he could inform himself, and did inform himself, and has expressed himself being willing to pay $10,000 for. As I see this defense, you are trying merely to prove that you made a bad bargain and therefore you ought to be let out of it. * * *"

Elsewhere the court expressed his view as follows:

"No, you have got a contract here and you signed it and you can't crawl out of it. * * * The court does not care to hear any more evidence in the cause, because it is assumed that it certainly will not contradict that of the defendant and any further evidence to the same effect the court would consider incompetent, irrelevant and immaterial and will not make out a defense. * * * False representation, in law, is a very definite thing, as everyone knows, and all the elements of the thing must be established by strict and convincing proof before a solemn written contract will be overthrown."

██ ██ We think the trial judge took the wrong view of the matter. The agent dealing fairly could recover compensation from the owner if he found for him a buyer able, ready, and willing to purchase, whether the buyer and owner had reduced the terms of the agreement to writing or not. The agent was suing on an oral contract between himself and the owner. The written sales agreement between the owner and the Coopers was a part of the evidence to make the agent's case, probably, but the liability of the owner to the agent did not depend upon it. It would seem that the trial judge thought, as there were no false representations as to the physical conditions surrounding the Cooper property and no concealed defects therein, there were no false representations which were material. It may be that in a controversy between the owner of real estate engaging in writing to exchange the same at stipulated prices, the expression of opinion as to value of the respective properties would not be considered as a statement of a fact, and, if the parties are on an equal footing and have equal opportunities and facilities for obtaining information as to value, expressions of value would be considered as dealers' talk merely, and as not sufficient, even if not true, to void a contract between such parties. They have dealt more or less at arm's length, but the rule applicable to real estate brokers is more strict.

"The broker occupies a fiduciary relation to the owner he represents in the sale of the property, owes full fidelity in the service he undertakes, and upon his faithfulness depends his right to compensation."

Eastburn v. Joseph Espalla, Jr., & Co., 215 Ala. 650, 112 So. 232, 233, 53 A. L. R. 134. See, also, 4 R. C. L. Brokers, paragraph 62. In 4 R. C. L. Brokers, paragraph 22, it is said:

"It naturally follows from the general rule requiring a broker to act with the utmost good faith toward his principal, that he is under a legal obligation to disclose to his employer all facts within his knowledge, which are or may be material to the matter in which he is employed, or which might influence the action of his employer in relation thereto. A broker does not fulfill the measure of legal requirements by merely carrying out his specific instuctions, for he owes the further duty of making a full, fair and prompt disclosure of all facts affecting the principal's rights or interests, or in any way pertaining to the discharge of his agency. Thus, even though a broker is authorized by his prin-

cipal to sell or exchange the property of the latter upon specified prices and terms, he is nevertheless, in duty bound, upon hearing that a more advantageous sale or exchange can be made, the facts concerning which are unknown to the principal, to communicate the same to him before making the sale as expressly authorized; and a neglect to do so renders him liable to his principal for whatever loss the latter may suffer as a consequence thereof."

And this is so, even though the contract between the respective owners of the property may be binding on each of them.

"A broker must act in good faith with his principal, and, if he is guilty of any misrepresentations or deception which induces the principal to contract for the sale of his lands, the broker cannot recover commissions, even though the contract becomes binding upon the vendor."

Whaples v. Fahys et al., 87 App. Div. 518, 84 N. Y. S. 793, 795.

In Carpenter v. Fisher, 175 Mass. 9, 55 N. E. 479, the court said:

"The defendant had a right to believe that if the plaintiff then knew, or in the course of the proceedings discovered, any facts which he (the defendant), contemplating a purchase, ought to know, the plaintiff would disclose them, whether these facts related to the views or desires of the seller, to the price at which he would consent to sell if he could not get more, to the condition, qualities, or value of the property, as bearing upon the price which the purchaser could reasonably afford to pay for it, or to anything else in the interest of the proposing purchaser. For example, if the plaintiff had known, or had reason to think, that the property could be bought for less than the sum named by the defendant as the sum he was willing to pay, it became his duty, upon accepting the defendant's promise to pay him for his services in the transaction, to disclose that to the defendant. The fact that the principal names a sum as the sum he is willing to pay is in no sense final. One of the benefits which such a principal is entitled to receive from the broker, whose services he secures by his promise to pay for them, is information and aid enabling him to get the property for less than he is, without that information and aid, willing to pay."

In Wiruth v. Lashmett et al., 82 Neb. 375, 117 N. W. 887, 888, a case involving the relations of a real estate agent and his principal, it is said the principal

"has a right to believe that the agent is acting for his best interest. The exalting of value by an agent employed to purchase for his principal beyond what he knows it to be is not permitted; and, if the principal relied upon the representations of his agent, the latter and his co-conspirator must be held responsive. The par-

ties are not upon equal grounds. The principal is not required to rely upon his own judgment. He employed the agent instead, that he might have the benefit of the agent's judgment."

See, also, Dwinell v. Watkins, 86 Neb. 740, 126 N. W. 304; McMurray v. Garnett (Mo. App.) 182 S. W. 128.

We are not unaware of the decision of the Iowa court in Michaelson v. Schulke, 180 Iowa, 201, 163 N. W. 228, 230, holding that one who makes an unimpeded examination of premises, prior to purchase, and after certain false representations as to value had been made to him by another, may not thereafter assert that he relied upon such false representations. But in that case, while the owner said he was "standing" on the word of the agent that the land in question was worth $150 an acre, and that he took his word and believed him, yet on the other hand it appears that, when the agent stated that the land "sells" for $150, the wife of the defendant owner said, in the presence of said defendant, that she did not believe it; and that they wanted to go to town before the contract signing to find out what the contract meant. In that case, the court heard the evidence, on behalf of defendant as to value and commented thereon, as follows:

"There is testimony by one witness that the market value of the Holst land in the spring of 1911 was $115. The same testimony is given by another witness. This witness, however, testifies that somewhere about that same time, or a little later, he sold his own farm, not particularly better than the one in inquiry, for $155 an acre. The third witness gives the value as from $115 to $120 an acre; says there is no particular fault with the farm, but that $120 was the most it was worth in the spring of 1911. There is no evidence that plaintiffs knew the farm was not worth and salable for the sum they are alleged to have represented."

Pratt v. Allegan Circuit Judge, 177 Mich. 558, 143 N. W. 890, is authority for the proposition that a representation that property would readily sell in a certain market at a given price is a representation of fact, and, if relied upon, may be made the basis of an action grounded on false representations. Ross v. Bolte, 165 Iowa, 499, 146 N. W. 31, defined the measure of damages when there is a false representation as to value wholly relied upon, and holds that, although representations of a vendor as to value are generally merely expressions of opinion, yet,

where a buyer of a house indicated that he was ignorant of values at that place, and therefore proposed to rely upon the vendor, and the vendor thereupon stated as a fact that the house was worth a certain amount, and its rental value was a certain amount, such representations may be a proper basis for a charge of fraud. Van Vliet Fletcher Auto Co. v. Crowell, 171 Iowa, 64, 149 N. W. 861, holds that the rule that an expression of opinion as to the value of property will not ordinarily sustain an action for fraud does not apply, where the representation was intended to be taken as a fact and as inducement to the trade, where the parties do not have an equal opportunity to know the truth.

Such principles applying between vendor and purchaser, it would seem for stronger reasons to apply with greater force as against an agent suing the owner for commissions.

Where the evidence shows that the appellee was an experienced real estate agent, and that the owner (appellant) was ignorant as to such values, and agent makes representation as to the value of the Cooper residence proposed to be taken in exchange, we see no reason why the owner should not be permitted to introduce evidence of what the market value really was. Such evidence might afford a link in a chain to prove that the agent knew that his statement as to value was false. The following resume of the decision in Walker v. Johnson, 21 Misc. Rep. 16, 46 N. Y. S. 864, is given in Walker's Real Estate Agency, § 1076.

"On the trial of an action for a broker's commissions on an exchange of property in which the defense was that the defendant had been induced to part with his property by plaintiff's false representations; after plaintiff had been permitted to testify that defendant had told him that his property would not sell for the amount of the mortgage on it, and also that in plaintiff's opinion, defendant's property was worth less than that exchanged for it, defendant attempted to prove the value of his property, but the evidence was excluded; the court afterward, on plaintiff's request, charged that if defendant did not rely on any false representations made, plaintiff must recover. Held, that the exclusion of the evidence of the value of defendant's property was error."

We hold that the court erred in refusing the offered evidence, and it follows that the judgment must be reversed, and the cause remanded for a new trial, and it is so ordered.

PARKER and HUDSPETH, JJ., concur.

WATSON and SADLER, JJ., did not participate.