(91 South. 583)

## BERRY et al. v. MARX. (2 Div. 754.)

(Supreme Court of Alabama. Oct. 13, 1921. Rehearing Denied Nov. 17, 1921.)

**1. Brokers 65(1)—Real estate agent guilty of bad faith with principal forfeits compensation.**

A real estate agent, guilty of bad faith in failing to disclose to his principal all the circumstances of a transaction for which he seeks ratification and for which he is to receive a commission, forfeits his compensation.

**2. Brokers 65(2)—Failure to inform landowner of price and amount of cash payment held to prevent recovery of commissions.**

Where the owner agreed to pay real estate agents all they could get over $6,000 for selling certain land, on their selling it and closing the trade, their failure to inform him that the price to be paid by the purchaser from them was $9,276, and that $3,000 cash was to be paid on a certain date, instead of $1,500 which was to be paid the owner on that date prevents recovery of commissions.

**3. Brokers 31—Agreement of sale between sales agents and owner of land void; damages for breach not recoverable from latter.**

Where plaintiffs were agents of defendant to sell land for $6,000 net, and sold it to a third person for a much larger sum, and on more advantageous terms than those offered to defendant by plaintiffs and accepted by defendant, and failed to inform defendant fully of these facts, so defendant could ratify or disaffirm the sale, the agreement of sale between defendants and plaintiff was void, and no damages for breach of the contract of sale could be recovered.

**4. Appeal and error 1056(6)—Ruling adverse to plaintiff held harmless when, under his own evidence, he could not recover.**

In an action by real estate agents against a landowner for the value of their services in selling land, in which defendant introduced no evidence, and the testimony of plaintiffs disclosed undisputed facts which, if believed by the jury prevented recovery, error of the court, if any, in ruling on questions to witnesses adverse to plaintiffs was harmless, since the answers expected by plaintiffs could not change the result.

Appeal from Circuit Court, Greene County; Henry B. Foster, Judge.

Action by E. Rockwood Berry and another against Jacob Marx. From a judgment for defendant, plaintiffs appeal. Affirmed.

Henry McDaniel, of Demopolis, and Harwood, McKinley, McQueen & Aldridge, of Eutaw, for appellants.

The court was in error in its rulings on the evidence, as set out in the various assignments covering that phase of the case. 163 Ala. 511, 50 South. 917; 162 Ala. 433, 50 South. 381, 136 Am. St. Rep. 52; 157 Ala.

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

566, 47 South. 1031; 149 Ala. 256, 42 South. 740; 177 Ala. 636, 59 South. 286; 151 Ala. 249, 44 South. 203; 116 Ala. 395, 22 South. 540; 152 Ala. 549, 44 South. 650; 86 Ala. 146, 5 South. 473; 86 Ala. 151, 5 South. 157; 145 Ill. 92, 34 N. E. 53; 177 Mass. 117, 58 N. E. 177, 53 L. R. A. 241; 12 R. C. L. 68; 9 C. J. 568, note 67; Id. 659.

R. B. Evins, of Greensboro, Edward de Graffenried, of Tuscaloosa, and William Hawkins, of Eutaw, for appellee.

The defendant was entitled to the affirmative charge, and hence any errors were without injury. 201 Ala. 34, 77 South. 328; 13 C. J. 351–353.

MILLER, J. This suit was commenced by appellants against the appellee by attachment for $3,000. The defendant is a nonresident. The attachment was executed by being levied on certain land of defendant in Greene county, Ala.

There were several counts in the complaint. One claimed $3,000 for commissions under contract, for securing a purchaser for certain land of defendant, known as the Simmons place, in Marengo county, Ala.; another count claimed $3,000 damages for breach of contract between plaintiffs and defendant of sale of said land; and another count was for $3,000 for work and labor done and services rendered by plaintiffs for the defendant.

The case was tried on plea of general issue with agreement of counsel that defendant could show thereunder any matter that would be a defense by special plea, and plaintiffs could introduce in evidence any matter that would be proper in rebuttal under general or special replication. The court gave the jury this written charge at defendant's request:

"The court charges the jury that, if they believe the evidence in this case, they must find a verdict for the defendant."

The giving of this charge and the adverse rulings of the court to plaintiffs on questions propounded to some of their witnesses are assigned as errors.

[1] A real estate agent must be faithful to his principal; he must not be disloyal; he must act in good faith with him; he must represent the interests of his principal; and, if he is guilty of bad faith with his principal in the transaction of the business for which he is to receive commissions, he thereby forfeits his compensation. McGar v. Adams, 65 Ala. 106; Clay v. Cummins, 201 Ala. 34, 77 South. 328. This court, through Justice Thomas, in Clay v. Cummins, 201 Ala. 34, 77 South. 328, approving what was said by Justice Manning in People v. Township, 11 Mich. 222, declared:

The law "will not permit an agent to act for himself and for his principal in the same transaction, as to buy of himself, as agent, the property of his principal, or the like. All such transactions are void, as they respect the principal, unless ratified by him with a full knowledge of all the circumstances. To repudiate them, he need not show himself damnified; whether he has been or not is immaterial. * * * And in the case of a sale at a fixed price, by an agent, it is said to be immaterial that the principal has not been injured * * * or that the principal had fixed the price at which he was willing to sell, and that the agent buys at that price."

The agent, failing to disclose fully all the facts and circumstances of the transaction to the principal, and to receive a ratification thereof by him, is the fraud that renders the transaction void. Clay v. Cummins, supra.

[2] The plaintiffs are real estate agents. The defendant resides in New York, and owned lands in Greene, Sumter, and Marengo counties, Ala. All the transactions between plaintiffs and defendant in the matters involved in this suit are in writing by letters or telegrams. The bill of exceptions contains copy of each letter and telegram. Plaintiffs requested defendant to list his lands with them for sale, by letter of July 24, 1917. In reply of July 26th, defendant places his land with them for sale. The land, the subject-matter of this suit, was described as follows:

"Simmons land about 300 acres $6,000."

This letter stated:

"I hope you can dispose of some of these places. Prices are subject to change without notice."

Plaintiffs wrote defendant on July 28th, in reply to said letter, as follows:

"Of course the price you have named carries the usual commissions to us, five per cent. Please advise us tho whether or not this is your intention."

On August 6th, plaintiffs wrote defendant:

"We have not yet had reply to our recent letter to you, in which we asked you whether or not the prices you named for your properties were net."

The defendant replied August 9th:

"That the prices named you in my recent letter are net prices to me for my lands."

These letters contained many other matters, but it is not necessary for us to even give their substance. On August 20th plaintiffs wired defendant: "Simmons place sold, see letter." August 21st plaintiffs wired defendant:

"Sold Simmons place six thousand to you, five hundred cash, thousand January first, bal-

ance five annual payments, six per cent. Wire confirmation."

On August 21st plaintiffs wrote defendant letter confirming the telegrams. This letter also stated:

"You are to furnish an abstract of title and the survey of the land is necessary."

On August 20, 1917, prior to sending the telegrams, the plaintiffs, as agents for defendant, entered into a written contract with one E. L. Mims—the former to sell and the latter to purchase the Simmons place containing 317 acres, more or less, at the price of $30 per acre, payable as follows: $500 cash, $3.000 on or before January 1, 1918, balance in five equal annual payments, each bearing interest at 6 per cent., interest payable annually; the defendant to furnish complete abstract of title showing title to be merchantable, and to survey the lines and establish the acreage and defendant to pay for it—to be completed not later than January 1. 1918; the $500 cash to be returned to Mims in the event satisfactory title was not furnished. This contract was not mailed by plaintiffs to defendant. The purchase price for the land, the full terms and conditions of the trade were never written or wired by plaintiffs to the defendant. In the trial of this case, it appeared to him for the first time; then were its contents fully made known to him. On August 22d, the defendant wired the plaintiffs:

"Will accept six thousand Simmons place. One thousand cash, one thousand January 1st, balance four annual payments with six per cent. interest. Title close January 1st, if satisfactory. Send contract. Will return New York next week."

On August 23d, plaintiffs wired defendant:

"Can close on Simmons place five hundred cash, fifteen hundred January 1st, balance four annual payments, option to pay sooner. Interest from January 1st, possession to be given Jan. 1st. Wire acceptance."

Confirming this telegram on August 23d, plaintiffs wrote defendant in a letter, among other things, this:

"We inferred from your previous instructions that you were willing for reasonable terms. and made the sale to our client on that understanding. We collected from him $500 to bind trade, said $500 to be part payment on the place if the title shows up all right, but to be returned to him should the title be imperfect."

This letter notified defendant that E. L. Mims was the purchaser and deed would have to be made to him. On August 24th, defendant wired plaintiffs:

"Accept your last proposition Simmons place, abstract place and survey not necessary I have owned the property more than twenty-five years, send contract and check."

On August 31st, plaintiffs wrote defendant:

"Referring to our previous correspondence, and especially your letter of July 26th, 1917, it is our understanding that you have made us your agents to sell for you the following land: Simmons tract, about 300 acres, price $6,000 [and naming other places]. The prices named by you are net to you. All we get over and above said prices are to be retained by us as our commissions. You are to accept reasonable terms of payment and six per cent. interest rate."

On September 3; 1917, the attorney of plaintiffs wrote defendant a letter and enclosed deed to be signed by defendant to plaintiffs to the Simmons place, containing 313 acres, more or less, to be held in escrow as per agreement between them. The consideration named in the deed was $6,000. The defendant, on September 6th, wrote plaintiffs' attorney, and on September 11th, wrote plaintiffs similar letters, in substance, that the deed was received and all papers were mailed to his attorney at Linden, Ala., with instructions to abstract the property, and they could communicate with him.

The title by abstract appears merchantable. There arose by letter a controversy between plaintiffs and defendant as to the true acreage of the place. The defendant contending that the real Simmons place contained 272 acres, the plaintiffs claiming it was about 312; and, for the evidence, it appears to be 309.23 acres. So the deed from defendant to plaintiffs was never executed, and the trade was never consummated. The $500 cash payment was deposited to the credit of defendant in escrow. In January, 1918, it was returned to E. L. Mims. E. L. Mims was ready, willing, and able, from the testimony, to pay plaintiffs, on January 1, 1918, the $3,000 cash, and to give his notes for the balance of the purchase money secured by mortgage on the place, as per the terms of the agreement; and the plaintiffs were ready, willing, and able to pay defendant the $1,500 cash on January 1, 1918, and to give their notes and mortgage on the property for the balance of the purchase money, as per the terms of the trade.

On March 18, 1918, the defendant sold and conveyed by deed this place to N. B. Whitefield for $8,509.23, containing 309.23 acres. The plaintiffs were the agents of the defendant to sell the Simmons place containing 309.23 acres for $6,000 net to their principal. They sold it to E. L. Mims as agents of defendant for $9,276.90; $30 per acre, $500 to be paid cash, $3,000 to be paid January 1, 1918, and balance in five equal annual installments bearing 6 per cent. interest, payable annually. After selling it, they wired their principal it was sold for $6,000 to you,

$500 cash, and $1,000 to be paid January 1, 1918, and balance in five annual installments, bearing 6 per cent. interest, the interest payable annually. The plaintiffs afterwards closed the trade with their principal (the defendant) for $6,000; $500 cash, $1,500 to be paid January 1, 1918, and balance in four annual installments, bearing 6 per cent. interest, interest payable annually, deed to be made by defendant to the plaintiffs. They never informed defendant that E. L. Mims was to pay them $9,276.90 for the place, or $30 per acre, and that he was to pay $3,000 of this on January 1, 1918. These were material facts in the trade. Their principal should have been fully informed of them. These facts in the trade with Mims were concealed from their principal. In so doing they did not act in good faith with their principal. They were looking after their own instead of their principal's interest. Thus they were disloyal to him. Hence they forfeited their commissions. Therefore they cannot recover their commissions nor value for their services and labor rendered their principal, the defendant. Clay v. Cummins, 201 Ala. 34, 77 South. 328; Clifford v. Armstrong, 176 Ala. 441, 58 South. 430.

[3] The plaintiffs claim defendant agreed to sell the land for $6,000, that they purchased it from him at that price fixed, and that he damaged them by failing to convey it to them as agreed. As the plaintiffs, under the evidence, were agents of the defendant to sell the land for the fixed price of $6,000 net at the time they purchased it, and as plaintiffs sold it to another, E. L. Mims, before purchasing it from the defendant, for a much larger sum and on much more advantageous terms than those offered to and accepted by defendant, and as the plaintiffs failed, before purchasing the land from their principal (the defendant), to inform him fully of all these material facts and circumstances of the trade already made by them with Mims for this land, so the defendant could ratify or disaffirm the sale, then these facts rendered the agreement of sale between the plaintiffs and defendant void, and no damages for the breach of a void contract can be recovered. Clay v. Cummins, 201 Ala. 34, 77 South. 328; Clifford v. Armstrong, 176 Ala. 441, 58 South. 430.

[4] The court therefore did not err in charging the jury "if they believe the evidence in this case they must find a verdict for the defendant," when so requested in writing by the defendant. The defendant introduced no evidence. The admitted testimony of the plaintiffs disclose facts undisputed, which, if believed by the jury, prevent recovery by plaintiffs. It is therefore unnecessary to pass on the rulings of the court on questions to witnesses, adverse to plaintiffs; if the court erred, they would from necessity be without injury, as the answers expected by the plaintiffs could not change the result.

Affirmed.

ANDERSON, C, J., and SAYRE and GARDNER, JJ., concur.