(100 South. 111)

## JACKSON v. BERRY–SNELLINGS REALTY CO. (2 Div. 823.)

(Supreme Court of Alabama. April 24, 1924.)

**1. Brokers ⬤⟹37—Evidence held to warrant finding that realty corporation sold land as owner's agent.**

In action against realty corporation for money had and received, evidence *held* to warrant finding that corporation, in securing deed from owner, was not bona fide exercising its option as purchaser, but was acting as owner's agent, and that it sold land on owner's account for $40 an acre, while accounting for only $32.-50 per acre.

**2. Money received ⬤⟹15—Nature of action for money had and received stated.**

An action for money had and received is in its nature an equitable action, maintainable whenever one person has money which in equity and good conscience belongs to another, and no mere legal niceties should be permitted to defeat justice and prevent recovery.

**3. Brokers ⬤⟹31—That owner listing land for sale gave option held not to preclude proof land sold on owner's account.**

Where owner listed land for sale with realty corporation, and thereafter gave corporation option to purchase for much lower price, *held* not to preclude proof that corporation was acting as owner's agent in selling land four days after exercising its option, where it failed to notify owner that it was itself buying property under its option, and represented that it was offered much lower price than was the fact.

Appeal from Circuit Court, Marengo County; John McKinley, Judge.

Action in assumpsit by Florence P. Jackson against the Berry-Snellings Realty Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

I. I. Canterbury, of Linden, for appellant.

It was error to give the affirmative charge for defendant. McMillan v. Aiken, 205 Ala. 35, 88 South. 135; Rooks v. Swift & Co., 210 Ala. 364, 98 South. 16. The defendant practiced a fraud upon the plaintiff. 88 Minn. 213, 92 N. W. 956, 60 L. R. A. 734, 97 Am. St. Rep. 514; Mechem on Agency, 374; Hammentt v. Brown, 60 Ala. 498. The agent must deal with the principal in entire good faith. Clifford v. Armstrong, 176 Ala. 441, 58 South. 430; Taylor's Case, 94 Ala. 533, 10 South. 129; Allen's Case, 160 Ala. 529, 49 South. 431; Clay v. Cummins, 201 Ala. 36, 77 South. 328.

Wm. Cuninghame, of Linden, for appellee.

Plaintiff did not own or have any lien upon the property sold, and the action for money had and received does not lie. Hugerford v. Moore, 65 Ala. 232; M. & M. v. Felrath, 67 Ala. 189; Steiner Bros. v. Clisby, 103 Ala. 181, 15 South. 612; 27 Cyc. 868; Albertville v. Hooper, 196 Ala. 642, 72 South. 258. If there be a lack of proof of any averment necessary to recovery, the general charge should be given for defendant on proper request. C. of G. v. Isbell, 198 Ala. 469, 73 South. 648; Stowers v. Dwight Mfg. Co., 202 Ala. 252, 80 South. 90.

GARDNER, J. Suit by appellant against appellee on the common count for money had and received. Upon conclusion of the evidence, the court, at the request of the defendant, instructed a verdict in its favor, and from the judgment following the plaintiff has prosecuted this appeal.

[1] In the year 1918 plaintiff owned some farm lands situated about a mile from the

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

city of Demopolis, Ala., known as the Clover Hill plantation, but the plaintiff was residing in Kentucky. E. R. Berry was president of the Berry-Snellings Realty Company, a corporation engaged in the real estate business in the city of Demopolis, buying and selling real estate on commissions. Berry was a personal friend of plaintiff and her husband, F. H. Jackson. The evidence is without dispute that the plaintiff listed her plantation for sale with the Berry-Snellings Realty Company; all correspondence, however, being carried on between E. R. Berry, the president of the corporation, and F. H. Jackson, the husband of the plaintiff.

The realty company advertised the place for sale, concluding the advertisement, "owner in failing health, and must sell." One Cooper was the secretary of the realty company in the year 1918. He was well acquainted with the lands and with the Jacksons. He testified that these lands were listed with the realty company for sale during that year, and that they were sold by the company for Mrs. Jackson to Mr. Sparks for $40 per acre, and that to the best of his knowledge the company was acting as the agent of Mrs. Jackson in the sale. When the land was listed by the plaintiff for sale by the company the price authorized was $7,500, which, with the usual commission of 5 per cent. deducted, would have netted the plaintiff $7,125. The realty company reported the sale to the plaintiff at $32.50 per acre, and settled with the plaintiff on that basis, and refused to account for the difference between the $32.50 and the $40 per acre, for which the land was sold to Sparks. Were this the whole story the case would be free from difficulty.

It appears, however, that on January 5, 1918, the plaintiff entered into a written contract leasing this land for one year to the defendant, and in said lease gave to the defendant an option to purchase the property at the price of $7,125, provided the purchase price be tendered not later than January 1, 1919; and on October 22, 1918, the plaintiff executed a deed to the defendant company conveying the plantation for a consideration of $6,611.15; and on October 26, 1918, defendant conveyed the property by warranty deed to Sparks for a recited consideration of $8,136.80. The defendant therefore insists that it purchased the property from the plaintiff under the exercise of its option, and sold it to Sparks for and on its own account, and that profit realized therefrom was its own profit, with which the plaintiff has no concern. Counsel for appellee further argues upon the assumption that the evidence as to the relation of principal and agent, and that these lands were listed with the defendant for sale by the plaintiff, is without material effect, in view of the written option and the deed executed by the plaintiff direct to the defendant.

[2] We are not in accord, however, with this view. This is an action for money had and received, in its nature an equitable action maintainable whenever one person has money which in equity and good conscience belongs to another. In such a form of action, as said by this court in Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 South. 363:

"Equitable principles are given influence and effect, no mere legal niceties should be permitted to defeat ends of common justice and fair play and prevent a recovery."

[3] The court is not so much concerned in this particular action as to where rested for the moment the actual legal title, but rather with the question as to whether or not the defendant has in its hand money which in equity and good conscience belongs to the plaintiff. The mere fact that the plaintiff had given the defendant an option does not preclude the further proof that in fact the defendant was also the agent for the plaintiff for the purpose of making a sale of this plantation. Such was the conclusion of this court in the case of Cox v. Morton, 193 Ala. 401, 69 South. 500.

As previously stated, the evidence was without dispute that this land was listed with the defendant for sale, and that in fact the sale was made for and on account of the plaintiff. All communication with reference to this particular sale were by letter and telegram. On October 2, 1918, the defendant wired Jackson:

"We have a chance to place your farm at $36.50 net to you, all cash January first. If acceptable wire us and forward abstract."

Plaintiff through her husband wired acceptance on the following day. On October 3, 1918, the defendant wrote Jackson confirming the telegram, and further stated that the company's check for $500 was inclosed as first payment on the place, and that as soon as the abstract was obtained a deed would be prepared and forwarded for signature. The letter was silent as to whom the deed was to be made. It was written by E. R. Berry, the president of the corporation, and contained other matter of a personal character. To this letter was added the following postscript:

"On second thought, we think we had better wait until we get a return from our customer's check before sending you our check for $500. We presume that the check we are taking from our man is perfectly good and will be promptly paid, when presented. Just as soon as we get returns from it, we will send you our check for $500."

On October 15th the plaintiff received a telegram correcting that of October 2d, so as to state the price at $32.50 per acre rather than $36.50, which was an error attributable to the telegraph company. Mr. Jackson tes-

tified that, although the defendant had advised a customer had been secured for the purchase of the plantation, yet when the deed was forwarded it was made to the defendant company. The deed, however, was executed, forwarded, and settlement had, as previously stated, upon that basis. The Jacksons were entirely ignorant, however, that the defendant had secured a purchaser for the plantation at $40 per acre; these facts being subsequently discovered, and demand made for the difference.

From the evidence here presented the defendant not only failed to notify the plaintiff that it was itself becoming the purchaser under its option, but by its telegrams and letters clearly led the plaintiff to understand that as her agent they had secured a purchaser for the place. The price fixed in the defendant's option was $7.125 net to the plaintiff, which was several hundred dollars more than the consideration of the deed executed by the plaintiff to the defendant. From all the facts and circumstances, clearly the jury could. reasonably infer that the defendant in securing the deed from the plaintiff was not in the bona fide exercise of his option as a purchaser, but was acting as agent and selling the property on the plaintiff's account to a customer, then secured, for $40 per acre, while accounting to the plaintiff for only $32.50 per acre. The deed from the defendant to Sparks followed 4 days after the receipt of the deed to defendant by plaintiff, and, indeed, as previously noted, the secretary of the defendant expressly stated the land was sold by the company to Sparks for the plaintiff.

The rule prevailing as to principal and agent is well understood and has found frequent statement in the decisions. In Cox v. Morton, supra, is the following quotation:

"It is certain that agents are not permitted to become secret vendors or purchasers .of property which they are authorized to buy or sell for their principals, or, by abusing their confidence, to acquire unreasonable gifts or advantages, or to deal validly with their principals in any case, except when there is the most entire good faith, and a full disclosure of all the facts and circumstances, and an absence of all undue influence, advantage, or imposition."

And in Clifford v. Armstrong, 176 Ala. 441, 58 South. 430, is found the following, quoted with approval from the Iowa court:

"To permit an agent or confidential representative to secretly profit by his manipulation of the subject-matter of his agency is to offer a premium to fraud and breach of faith. The law therefore holds him bound to account to his principal for all such profits, even though they were received by transactions in excess of the authority given him; and this law is none the less imperative because he accounts for the full price for which he was authorized to sell."

To like effect are the recent cases of Clay v. Cummings, 201 Ala. 34, 77 South. .328, and Berry v. Marx, 206 Ala. 619, 91 South. 583.

Here the jury could infer from the evidence that the deed to the defendant was merely a conduit of title to the real purchaser, as to whom and the price to be paid the plaintiff was kept in total ignorance, and that in this manner the defendant sought to realize a secret profit. Such the law will not permit, and we think the following quotation from Farmers' Bank & Trust Co. v. Shut & Keihn, supra, is entirely appropriate to the instant case:

"There is an old quotation found among the legal maxims, 'What is just and right is the law of laws,' and while, because of necessary regard for conformity to fixed rules and principles, it may, unfortunately perhaps, be doubted that this can be said to have universal application, yet it at least points the way to an ethical goal and can find suitable application in the case at bar."

Any profits thus realized under the circumstances above noted, are not the profits of the defendant, but belong to the plaintiff, and which she would be entitled to recover in an action of this character.

We are therefore of the opinion the court committed error in instructing the jury to find for the defendant.

The question of the amendment of the complaint by the addition of two other counts needs no consideration. The one count of money had and received is entirely sufficient to meet all of plaintiff's needs so far as the pleading is concerned.

For the error indicated, the judgment will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.